558 S.E.2d 330

Michael M. HENSLER, Petitioner
Below, Appellant,

v.

David B. CROSS, Sergeant T.R. Cox, Mag-
istrate Michael Allman and Magistrate
Michael Fuscardo, Respondents Below,
Appellees.

No. 29563.

Supreme Court of Appeals of
West Virginia.

Submitted Oct. 2, 2001.

Decided Dec. 7, 2001.

Concurring Opinion of Justice
Starcher Dec. 13, 2001.

Gregory J. Campbell, Esq., Campbell & Turkaly, Charleston, West Virginia, Attorney for Appellant.

David B. Cross, Esq., Prosecuting Attorney of Brooke County, Wellsburg, West Virginia and Darrel V. McGraw, Jr., Esq., Attorney General, Dolores A. Martin, Esq., Assistant Attorney General, Charleston, West Virginia, Attorneys for Appellees.

William J. Charnock, Esq., West Virginia Prosecuting Attorneys Institute, Amicus Brief.

MAYNARD, Justice:

The appellant, Michael M. Hensler, appeals the January 5, 2001 order of the Circuit Court of Brooke County which denied his request for a writ of prohibition and ordered him to comply with the registration provisions of the Sex Offender Registration Act (Act), W.Va.Code §§ 15–12–1 to 10. He asks this Court to find that the Act, as it applies to him, violates *ex post facto* principles. We decline to so find and affirm.

## I.

### FACTS

The facts are not in dispute. The underlying criminal charges are discussed in *State v. Hensler*, 187 W.Va. 81, 415 S.E.2d 885 (1992). The appellant, a minister, operated a private school in the basement of his home during the 1985–86 school year. A fourteen-year-old male student's tuition was waived in exchange for an agreement to do yard work for the appellant. The student accused the appellant of making sexual advances toward him on four occasions while the student was at the appellant's home.

The appellant was indicted by a grand jury on November 6, 1989 on four counts of first-degree sexual abuse in violation of W.Va. Code § 61–8B–7. He was tried on the charges and found guilty on all counts. He appealed, contending that the definition of "forcible compulsion," W.Va.Code § 61–8B–1(1)(c), as applied to the charges, became the law after the dates of the alleged crimes. He contended that the application of the definition in his case constituted an *ex post facto* law which violated his right to due process. This Court agreed and reversed and remanded for a new trial. The Court believed the jury should be allowed to consider whether the alleged actions of the defendant rose to the level of forcible compulsion contained in W.Va.Code § 61–8B–1(1)(a) and (b).

The appellant subsequently entered into a plea agreement with the State wherein he pleaded no contest to three counts of a four

count information which charged him with four misdemeanor offenses of sexual abuse in the third degree in violation of W.Va.Code § 61–8B–9. Count four was held in abeyance. He was sentenced to 270 days in jail and fined $1,500. He was released from custody on September 19, 1994.

By letter dated July 11, 2000, the appellant received notification from the West Virginia State Police that he must register as a sex offender pursuant to W.Va.Code § 15–12–2 (2000).[1] On October 4, 2000, the appellant filed a writ of prohibition in circuit court seeking to prevent prosecution for failure to register as a sex offender. He argued that the sex offender registration act, as applied to him, violated *ex post facto* principles contained in Article III, Section 4 of the West Virginia Constitution.[2] In the court's January 5, 2001 order denying the writ, the court stated that:

> The Sex Offender Registration Act does not make criminal conduct which was previously legal, or increase the punishment for an existent crime. Registration is a collateral consequence of the Petitioner's conviction for a sex offense against a child rather than a penalty or an enhancement of the sentence. If registration is not punishment it cannot, therefore, violate ex post facto principles.

\* \* \*

The Petitioner contends that the legislature's finding that persons required to register as sex offenders pursuant to the legislation have a reduced expectation of privacy is also an ex post facto violation in that it alters the situation of the accused to his disadvantage. This argument is without merit for the same reasons stated by this Court discussion of the ex post facto challenge.

It is from this order the appellant appeals.[3]

On appeal, the appellant contends that the circuit court erred by denying the writ of prohibition. He emphasizes that he is not attacking the constitutionality of the registration act. Instead, he contends that the act, as it applies to him, violates the *ex post facto* provisions of the West Virginia Constitution in that the significant date involved in this analysis is the date of the offense rather than the date of conviction or sentencing. He insists that the Act operates to his detriment because it "contains a finding by the [L]egislature that persons required to register as sex offenders have a reduced expectation of privacy." This, he believes, is an involuntary loss of a constitutional right which is punitive. The appellees, David Cross, Prosecuting Attorney of Brooke County, Sergeant T.R. Cox, West Virginia State Police, and Brooke County Magistrates Allman and Fuscardo, argue that the statute does not violate the *ex post facto* clause even though it may impose a burden upon the appellant because the legislative purpose is regulatory rather than punitive.

## II.

### DISCUSSION

■ "When the constitutionality of a statute is questioned every reasonable construction of the statute must be resorted to by a court in order to sustain constitutionality, and any doubt must be resolved in favor of the constitutionality of the legislative enactment." Syllabus Point 3, *Willis v. O'Brien,* 151 W.Va. 628, 153 S.E.2d 178 (1967). Moreover, "[i]n considering the constitutionality of an act of the legislature, the negation of legislative power must appear beyond reasonable doubt." Syllabus Point 1, in part, *State ex rel. Appalachian Power Co. v. Gainer,* 149 W.Va. 740, 143 S.E.2d 351 (1965).

We begin our analysis with a brief history of the Act. At the time the appellant commit-

---

1. We are aware that the Legislature amended W.Va.Code § 15–12–2 in 2001. The modifications to the statute are not at issue in this case.

2. Article III, Section 4 of the West Virginia Constitution states in pertinent part, "No bill of attainder, ex post facto law, or law impairing the obligation of a contract, shall be passed."

3. The appellant filed a motion for stay pending appeal in this Court asking this Court to rule that he did not have to register until the matter is resolved. The motion for stay was denied on February 21, 2001 and the appellant states that he registered that day.

ted these crimes in 1985–86, West Virginia did not have a sex offender registration and notification act. In 1993, when the Act was first enacted, it was contained in Chapter 61 of the West Virginia Code titled Crimes and Their Punishment. Then,

> In 1994 Congress enacted legislation requiring states, as a condition to some federal funding, to enact registration laws covering certain sex offenders. Those registration laws, aimed particularly at protecting minors and the potential victims of sexually violent offenses, would require registrants to verify their addresses annually for ten years (as well as changes in address) and to provide fingerprints and a photograph, and would explicitly permit release of information necessary to protect the public "concerning a specific person required to register." 42 U.S.C.A. § 14071(b) and (d).

*Doe v. Poritz*, 142 N.J. 1, 17, 662 A.2d 367, 376 (1995). In 1996, the federal law was amended to include implementation of the federal community notification statute by September 1997.[4] West Virginia's Act was amended in 1996, 1997, and 1998. In 1999, the Act was once again amended and moved to Chapter 15, Public Safety. The 2000 amendments declared for the first time that sex offenders who are required to register "have a reduced expectation of privacy." W.Va.Code § 15–12–1a(c) (2000). The appellant was required to register under the 2000 amendments.

The Act succinctly states, "The provisions of this article apply both retroactively and prospectively." W.Va.Code § 15–12–2(a) (2000). The Act sets forth with particularity those persons who must register.

(b) Any person who has been convicted of an offense or an attempted offense or has been found not guilty by reason of mental illness, mental retardation or addiction of an offense under any of the following provisions of chapter sixty-one of this code or under a similar provision in another state, federal or military jurisdiction shall register . . . :

(1) Article eight-b [sexual offenses];

(2) Article eight-c [filming of sexually explicit conduct of minors];

(3) Sections five and six, article eight-d [sexual abuse by a parent, guardian or custodian and sending, distributing, exhibiting, possessing, displaying or transporting material by a parent, guardian or custodian, depicting a child engaged in sexually explicit conduct];

(4) Section fourteen, article two [abduction of person, kidnapping or concealing child]; or

(5) Sections six, seven, twelve and thirteen, article eight [detention of person in place of prostitution and procuring for house of prostitution and incest].

(c) Any person who has been convicted of a criminal offense, which at the time of sentencing was found by the sentencing judge to have been sexually motivated, shall also register as set forth in this article.

W.Va.Code § 15–12–2(b) and (c) (2000).

The duration of registration is for ten years excluding "ensuing periods of incarceration or confinement," W.Va.Code § 15–12–4(a)(1) (2000), except for those who must register for life. A person who must register for life is one who

---

**4.** 42 U.S.C.A. § 14071(e) (West Supp.2001) provides:

> (1) The information collected under a State registration program may be disclosed for any purpose permitted under the laws of this State.
> (2) The State or any agency authorized by the State shall release relevant information that is necessary to protect the public concerning a specific person required to register under this section, except that the identity of a victim of an offense that requires registration under this section shall not be released.

Our research shows that all fifty states have registration laws; only three states, Kentucky,

Nebraska, and New Mexico, do not have a community notification statute. An Overview of Sex Offender Community Notification Practices: Policy Implications and Promising Approaches 1 n. 1 (Madeline M. Carter ed., Nov. 1997). We note also that most *ex post facto* and double jeopardy challenges to Sex Offender Registration Acts have failed. Wayne A. Logan, *Liberty Interests in the Preventive State: Procedural Due Process and Sex Offender Community Notification Laws,* J.Crim. L. Criminology, Summer 1999 v. 89, at 1167.

(A) Has one or more prior convictions or has previously been found not guilty by reason of mental illness, mental retardation or addiction for any qualifying offense referred to in this article; or (B) has been convicted or has been found not guilty by reason of mental illness, mental retardation or addiction of a qualifying offense as referred to in this article, and upon motion of the prosecuting attorney, the court finds by clear and convincing evidence, that the qualifying offense involved multiple victims or multiple violations of the qualifying offense; or (C) has been convicted or has been found not guilty by reason of mental illness, mental retardation or addiction of a sexually violent offense; or (D) has been determined pursuant to section two-a of this article to be a sexually violent predator; or (E) *has been convicted* or has been found not guilty by reason of mental illness, mental retardation or addiction *of a qualifying offense as referred to in this article, involving a minor.*

W.Va.Code § 15–12–4(a)(2) (2000). (Emphasis added). If a person's conviction is overturned, that person can have his or her name removed from the registry by petitioning the court. W.Va.Code § 15–12–4(b) (2000). In the case *sub judice*, the appellant must register for life because he was convicted of sex crimes involving a minor.

The Act also provides for community notification. The state police, who maintain the registry pursuant to W.Va.Code § 15–2C–2 (2000), shall "make available to the public at least quarterly the list of all persons who are required to register for life[.]" W.Va.Code § 15–12–5(b)(2) (2000). If an offender is determined to be a "sexually violent predator[,]" the prosecutor must cooperate "with the state police in conducting a community notification program[.]" W.Va.Code § 15–12–5(b)(1) (2000).

■■■ The appellant believes the circuit court improperly applied the registration and notification statutes to him because he committed these sexual offenses prior to the enactment of the Sex Offender Registration Act. Our basic *ex post facto* rule is set forth in Syllabus Point 1 of *Adkins v. Bordenkircher,* 164 W.Va. 292, 262 S.E.2d 885 (1980), which states, "Under *ex post facto* principles of the United States and West Virginia Constitutions, a law passed after the commission of an offense which increases the punishment, lengthens the sentence or operates to the detriment of the accused, cannot be applied to him." [5]

■■■ The appellant argues that the Act should not apply to him because it operates to his disadvantage in that it reduces his expectation of privacy. We agree with the Supreme Court of Washington that "the sole determination of whether a law is 'disadvantageous' is whether the law *alters the standard of punishment* which existed under prior law." *State v. Ward,* 123 Wash.2d 488, 498, 869 P.2d 1062, 1068 (1994) (citing *Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990)).

Moreover, we find instructive the analysis contained in *State v. Taylor,* 67 Wash.App. 350, 835 P.2d 245 (1992). In *Taylor,* the defendant was convicted of attempted indecent liberties in 1990. He was informed on March 11, 1991 that he must register as a sex offender. He appealed, contending that the law violated *ex post facto* principles. After defining "disadvantage" as increasing or enhancing punishment,[6] the Court of Appeals of

**5.** In *State v. R. H.,* 166 W.Va. 280, 288–89, 273 S.E.2d 578, 583–84 (1980), *overruled on other grounds by State ex rel. Cook v. Helms,* 170 W.Va. 200, 292 S.E.2d 610 (1981), this Court adopted "[t]he early classic definition of an ex post facto law [as] was set forth by the United States Supreme Court in *Calder v. Bull,* 3 Dall. 386, 3 U.S. 386, 1 L.Ed. at 648 (1798)[.]" In that case, *ex post facto* laws are defined as

(1) Every law that makes an action done before the passing of the law, and which was innocent when done, criminal, and punishes such action; (2) every law that aggravates a crime, or makes it greater than it was when committed; (3) every law that changes the punishment, and inflicts a greater punishment than the law annexed to the crime when committed; (4) every law that alters the legal rules of evidence, and receives less or different testimony than the law required at the commission of the offense, in order to convict the offender. 3 Dall. at 390, 3 U.S. at 390, 1 L.Ed. 648.

**6.** The *Taylor* court recognized that the term "disadvantage" arguably suggests that nothing more is necessary in order to have an *ex post facto* law violation than a substantive law given retroactive

Washington proceeded to the question of whether the Act is regulatory or punitive. The court recognized that the Washington Legislature clearly set forth the purpose of the registration statute as being regulatory by "assisting law enforcement agencies in protecting their communities by making available useful information regarding known sex offenders." *Id.,* 67 Wash.App. at 357, 835 P.2d at 249. The court then proceeded to answer "[t]he question [of] whether the effect of the statute is so punitive as to override the intended regulatory purpose." *Id.* The court held it is not.

Similarly, the West Virginia Legislature endorsed the Act with a clear statement of regulatory purpose by stating:

(a) It is the intent of this article to assist law-enforcement agencies' efforts to protect the public from sex offenders by requiring sex offenders to register with the state police detachment in the county where he or she shall reside and by making certain information about sex offenders available to the public as provided in this article. It is not the intent of the Legislature that the information be used to inflict retribution or additional punishment on any person convicted of any offense requiring registration under this article. This article is intended to be regulatory in nature and not penal.

(b) The Legislature finds and declares that there is a compelling and necessary public interest that the public have information concerning persons convicted of sexual offenses in order to allow members of the public to adequately protect themselves and their children from these persons.

(c) The Legislature also finds and declares that persons required to register as sex offenders pursuant to this article have a reduced expectation of privacy because of the state's interest in public safety.

W.Va.Code § 15–12–1a (2000). The Legislature clearly set forth the purpose of the statute as being regulatory by assisting law enforcement officials' efforts to protect the innocent public from sex offenders.

 We now proceed to the question of whether the effect of the statute is so punitive as to override the stated regulatory purpose.

[T]he question whether an Act is civil or punitive in nature is initially one of statutory construction. A court must ascertain whether the legislature intended the statute to establish civil proceedings. A court will reject the legislature's manifest intent only where a party challenging the Act provides the clearest proof that the statutory scheme is so punitive in either purpose or effect as to negate the State's intention.

*Seling v. Young,* 531 U.S. 250, 261, 121 S.Ct. 727, 734, 148 L.E.2d 734, 745 (2001) (citations omitted). "[T]he proper inquiry is ... whether [the law] makes more burdensome the *punishment* for the crime." *State v. Ward,* 123 Wash.2d 488, 497, 869 P.2d 1062, 1067 (1994). We find that the purpose of the Act is not to punish the offender. The Act does not make an action which was innocent when done, criminal and punish it as such; the Act does not aggravate a crime or make it greater than when it was committed; the Act does not make the punishment for a crime more burdensome by inflicting a greater punishment than the law annexed to the crime when it was committed. Consequently, the appellant is not "disadvantaged" because the Act does not alter, by enhancing or increasing, the standard of punishment under which he was convicted. The Act is not so punitive as to override the regulatory purpose.

The appellant does not argue that his movement will be restricted or impeded in any way because he must register; neither does he argue that punishment is enhanced because deterrence is an objective of the Act. He argues only that the Act alters his situa-

application which works to the disadvantage of an individual. The court further noted that the United States Supreme Court expressly rejected the "disadvantage" concept in *Collins v. Youngblood,* 497 U.S. 37, 110 S.Ct. 2715, 111 L.Ed.2d 30 (1990), in favor of the requirement that an *ex*

*post facto* law, among other requirements, must increase or enhance punishment. Our use of the term "disadvantage" is in accordance with *Taylor* and *Collins* in that we use "disadvantage" to mean an increase in or enhancement of punishment.

**536**

tion to his disadvantage because he now has a reduced expectation of privacy. The appellant overlooks the fact that much of the information required by the statute is public information generally available to the public if they make a reasonable effort to obtain it. The appellant's conviction, the nature of the crime, and when and where the conviction took place are all matters of public record. In employment situations, the information can often be obtained from the applicant.

Moreover, sex crimes and sex offender recidivism present real and substantial challenges to law enforcement officers who are charged with protecting the innocent public and preventing crime. We are aware that sex offenders are significantly more likely than other repeat offenders to reoffend with sex crimes or other violent crimes and the tendency persists over time.

We, therefore, conclude that the disadvantages which the Act imposes on the appellant are not sufficient to make the registration statute punitive in overall effect. We hold that the Sex Offender Registration Act, W.Va.Code §§ 15–12–1 to 10, is a regulatory statute which does not violate the prohibition against *ex post facto* laws.

### III.

### CONCLUSION

The appellant committed multiple sexual offenses against a minor and, as a result, must submit to the registration and notification requirements of the Sex Offender Registration Act. The circuit court committed no error in refusing to award a writ of prohibition. The judgment of the Circuit Court of Brooke County is affirmed.

Affirmed.

STARCHER, Justice, concurring:

(Filed Dec. 13, 2001.)

I concur in the Court's judgment because as the majority opinion demonstrates, the law is fairly well settled that most sexual offender registration statutes, being essentially civil regulatory statutes, are not subject to an *ex post facto* analysis.

However, as civil statutes, these statutes *are* subject to other constitutional scrutiny, including substantive and due process scrutiny. A statute which fails to allow a person to make an individualized showing that their registration is no longer appropriate may be constitutionally infirm. Nothing in the majority opinion would preclude the presentation and consideration of such a case. Our law, even at its fiercest and most protective, must also serve the purpose of rehabilitation. I personally feel that "lifetime" registration without even the *possibility* of "unregistering" upon proof of full rehabilitation is wrong as a policy matter, and it may be constitutionally wrong as well.